UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:17-CR-00082-KJM |
| Plaintiff, | |
| v. | ORDER |
| JOHN ANTHONY AYON, | |
| Defendant. | |

On January 7, 2019, defendant John Anthony Ayon requested a court-ordered mental health evaluation to determine his competency to stand trial under 18 U.S.C. § 4241(a). The government did not object. ECF No. 35. The court committed defendant to the custody of the U.S. Bureau of Prisons for a psychiatric and/or psychological examination. Order, ECF No. 37. The Bureau of Prisons returned its forensic evaluation of defendant on April 9, 2019. ECF No. 49. Defendant's counsel filed a competency hearing brief in which he urged the court to hold the defendant incompetent to stand trial. ECF No. 62. Concurrently, he filed a request to seal, ECF No. 61, report of examining neuropsychologist Dr. John Wicks, PhD, ECF No. 63, report of BOP forensic psychologist Dr. Samantha Shelton, Psy.D., ECF No. 64, and counsel's own declaration, ECF No. 65. Given that Dr. Shelton referenced defendant's email communications with third parties, the court directed the emails be provided for *in camera* review; the court received the emails, which are voluminous, on October 16, 2019. *See* ECF No. 102. The court

1

shared the emails, subject to a confidentiality restriction, with both counsel after a status conference on September 30, 2019. *See* ECF No. 77. The parties then argued their respective positions at a further status on October 28, 2019. ECF No. 90.

Having reviewed the evidence and the filings in this matter, the court denies defendant's request to have him declared incompetent to stand trial.

I. FACTUAL BACKGROUND

Defendant John Ayon was arrested by a San Joaquin County Sheriff's Deputy on May 22, 2017. Compl., ECF No. 1 at 3. Deputy George Negrete allegedly observed him driving a GMC Acadia SUV that was pacing a Chevrolet Camaro, which Deputy Negrete believed indicated possible narcotics trafficking. *Id*. Deputy Negrete pulled Ayon over for a nonoperational brake light and failing to maintain his lane. *Id*. After a drug detection dog alerted on an exterior sniff of the vehicle, a search of the trunk area yielded a duffel bag with approximately 40 pounds of methamphetamine in cellophane wrapped bundles. *Id.* at 4. Ayon was arrested. *Id.* Another deputy arrested the driver of the Camaro, Raul Rikards Carillo, and found two pounds of methamphetamine in his car. *Id.* at 4-5. Both men were charged with, *inter alia*, violations of 21 U.S.C. § 841(a)(1), possession of methamphetamine with intent to distribute. Superseding Indictment, ECF No. 19.

After defense counsel interacted with Ayon over the course of a few months, counsel retained neuropsychologist Dr. John Wicks to evaluate Ayon's mental competency to stand trial. Minutes for Status Conference, ECF No. 32; Order for Mental Examination, ECF No. 37. This court ordered the U.S. Bureau of Prisons to examine Ayon to determine whether he was mentally incompetent to stand trial. *Id*. Forensic psychologist Dr. Samantha Shelton evaluated Ayon at the Metropolitan Detention Center in Los Angeles ("MDC") and issued a report on April 8, 2019. Report of Dr. Shelton, ECF No. 49. As noted, the court ordered the MDC to produce the emails between Ayon and third parties that Dr. Shelton relied on in her report. Order, ECF No. 69. The MDC produced the emails in camera to the court, and the court provided the emails to counsel. Emails, ECF No. 102.

/ / / / /

## II. LEGAL STANDARD

An individual is incompetent to stand trial if he suffers from a mental disease or defect that renders him (1) unable to understand the nature and consequences of the legal proceedings against him; or (2) unable to assist properly in his defense. 18 U.S.C. § 4241(a); *see also Drope v. Missouri*, 420 U.S. 162, 171 (1975). The test for a defendant's competency to stand trial is whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational and factual understanding of the proceeding against him. *Dusky v. United States*, 362 U.S. 402 (1960). The government has the burden of showing a defendant is competent to stand trial by a preponderance of the evidence. *United States v. Hoskie*, 950 F.2d 1388, 1392 (9th Cir. 1991).

## III. DISCUSSION

The defense neuropsychologist, Dr. Wicks, performed a battery of tests on Ayon while Ayon was housed at the Sacramento County Jail. Dr. Wicks summarizes the result of his testing as follows:

> In general, the examinee has problems with basic attention, concentration, short-term verbal memory, verbal abstraction, and verbal learning. His impairments in executive functioning include verbal abstraction abilities, sequencing information, shifting efficiently between overlearned sets of information, and novel problem solving with information feedback. Such problems are frequently associated with poor judgment and ability to function well in everyday life.

Report of Dr. John Wicks ("Wicks Report"), ECF No. 63 at 21.

According to Dr. Wicks' report, Ayon's cognitive abilities display a split between metrics of verbal intelligence, which are quite low, and nonverbal metrics, which are average or even above average. For instance, Ayon's Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV) Composite Score for Verbal Comprehension is 66, "Extremely Low/Mentally Retarded" and his Composite Score for Perceptual Reasoning is 113, "High Average/Bright Normal." Wicks Report at 6. Dr. Wicks also diagnoses Ayon with Attention Deficit/Hyperactivity Disorder, Specific Learning Disorder, Stimulant Use Disorder, and General Personality Disorder "with avoidant and passive-dependent traits in addition to social immaturity." Wicks Report at 24.

Dr. Shelton performed her own evaluation of Ayon on order of the court on January 31, 2019, and produced a report dated April 8, 2019. Report of Dr. Samantha Shelton, Psy.D. ("Shelton Report"), ECF No. 64. She relied in part on recorded phone calls and intercepted emails between Ayon and third parties in producing her report. Shelton Report at 5-6. She concluded his emails "were not indicative of an individual with significant deficits with reading, comprehension, and writing, and he was able to engage in reciprocal, logical, and goal-orientated conversation." Shelton Report at 8. According to Dr. Shelton's report, "Mr. Ayon did not participate in the assessment to determine whether he understood the nature and consequences of the court proceedings against him." Shelton Report at 13. Nonetheless, Dr. Shelton was able to conduct a general assessment of Ayon's psychological functioning not directed toward the legal standard for competence and a full review of his emails. Dr. Shelton concluded that Ayon "appears fully competent to understand the nature and consequences of the court proceedings against him, and to properly assist counsel in his defense." *Id.* at 14.

The emails show Ayon likely did not participate in Dr. Shelton's direct evaluation of his competency out of frustration and obstinacy. Before his examination with Dr. Shelton, he sent an email to Letitia Ruiz, the mother of his child, in which he states, "they had 2 months i quit, its over, im done, im waiting to talk to my phyc [sic] to mandar todo esto ala verga [*roughly translated* "to f--- off"] its ovio [obvious] ima do some time now." ECF No. 102 at 282 (punctuation and spelling in original). In another email to Ruiz, Ayon states, "my psych came today to talk/test me. i told her i'm done, im done with all this. you guys had 2 months to test me. its obvious im doing time now." ECF No. 102 at 169 (punctuation and spelling in original).

Ayon references the criminal proceedings in his emails only obliquely. The emails do suggest his limited understanding of the proceedings, on the one hand. He states in an email to Mona Ayon, apparently his sister, that he thinks he will be receiving a five-year sentence. She asks, "How do you know it's five years ?" He replies, "i dnt know but that's wat im asuming or it could be more[.]" ECF No. 102 at 390 (punctuation and spelling in original). The charges against Ayon in the superseding indictment, however, carry mandatory minimum exposures of at least ten years. Superseding Indictment at 1-2 (Counts One and Two). On the other hand,

perhaps Ayon is referencing a plea deal tendered to him for his consideration before the court ordered the determination of his competency. *See, e.g.*, ECF 33 (government counsel representing at status that plea deals being extended shortly).

On another occasion, Ayon's reply to his sister inquiring about the status of his case is "idk i just dont all they be talking about is laws and shit." ECF No. 102 at 525 (punctuation and spelling in original). This missive does not indicate Ayon made an earnest effort to understand the proceedings and failed, but rather that he is not attempting at all. Ayon's counsel, however, argues that he "does not understand core criminal justice concepts such as his rights, the role of the parties in the case, the nature of conspiracy law and the plea agreement tendered to him as part of the plea agreement process." Competency Hearing Brief, ECF No. 62 at 4. The government takes the opposite position. At argument, neither defense counsel nor the government pointed to any emails in particular, but rather based their positions on the totality of the inferences to be drawn from the emails, reading them all together.

In *United States v. Frank,* the court found the defendant, a Navajo who lived in an isolated part of an Indian reservation, mentally competent to stand trial despite his limited understanding of the proceedings. 933 F.2d 1491 (9th Cir. 1991). Experts on both sides testified Frank did not understand his constitutional rights. *Id.* at 1496. The court found that the defendant's lack of comprehension of his rights was due not to his depression or "low average" intelligence, but his lack of education in the American criminal justice system. *Id.* at 1497. The Ninth Circuit agreed with the district court that the defendant's lack of understanding was "not so much the result of mental incompetency as cultural differences." *Id.*

In *United States v. Glover,* the defendant's Wechsler Adult Intelligence Test score was 67, placing him in the bottom 1 percent of society. 596 F.2d 857, 864 (9th Cir. 1979). He needed proceedings explained to him in simple language by his counsel. *Id.* at 867. Nonetheless, the court found him competent to stand trial because he "displayed a good knowledge of the facts surrounding his arrest and had an understanding of the charge against him." *Id.*

On the other hand, in *Hoskie*, cited above, the defendant was incompetent to stand trial where he was unable to understand abstractions like guilt, innocence, or rights. *Hoskie*, 950

F.2d at 1392-93.  The defense expert spent minutes at a time explaining basic criminal justice concepts like a jury to the defendant, at which point he would show "a glimmer" of understanding, but within minutes of the conversation he would again have no understanding at all.  *Id.* at 1392.

Similarly, in *United States v. Moroyoqui-Gutierrez*, a defendant charged with illegal reentry into the United States after deportation was incompetent to stand trial where expert testimony, credited by the court, established that he suffered from Delusional Disorder, Grandiose Type.  602 Fed. Appx. 378, 379 (9th Cir. 2015).  The defendant believed he was a prophet who would be acquitted if the judge "received" the spirit.  *Id.*  Because the defendant's delusions went to the core of his legal defense, the Ninth Circuit affirmed the district court's determination of incompetency.  *Id.* at 379-80.

The foregoing examples help define the contours of what is sometimes termed the "understand and assist" test.  *United States v. Clark*, 617 F.2d 180, 185 (9th Cir. 1980) (reiterating test).  Generally, under this test, an incomplete or simplistic understanding of the proceedings does not preclude competence to stand trial.  On the other hand, mental impairments that entirely negate a defendant's ability to grasp fundamental aspects of the case may destroy competence.  As in *Frank*, 933 F.2d at 1497, it is important to distinguish between an inability to understand and assist and mere ignorance of criminal justice concepts.

Based on the record before the court, it appears Ayon does not have a nuanced understanding of the proceedings against him.  However, nuance is not the *sine qua non* of competence.  And here, Ayon's simplistic understanding of the process does not appear to be due to a mental condition that precludes his ability to understand.  On the contrary, his emails show an individual intelligent enough to grasp nuance and complexity in relation to topics that interest him.  His emails with the mother of his child show his ability to track a complex relationship, draw logical inferences, and recall past events in detail. *See, e.g.,* ECF No. 102 at 2 (email asking for clarity on future of relationship with mother of his child).   His emails about prison culture also show his understanding of social dynamics.  ECF No. 102 at 451 (explaining significance of "paisa" tattoo).  Against this backdrop, Ayon's lack of understanding appears to stem from a

6

willful ignorance of the criminal justice system, as opposed to an inability to understand and assist in his own defense.

The reports of both psychological evaluators and the emails do depict Ayon as an individual resigned to what he perceives as his fate. But resignation is not equivalent to incompetence. It appears to the court, on a full review of the record, that Ayon's unhelpfulness in sessions with his counsel and lack of engagement with court proceedings is due to his having decided not to be helpful, as opposed to any incompetence. Although Ayon's low verbal intelligence scores are troubling in the context of a court process essentially driven by language, Ayon does have sufficient command of language to communicate by email when he wants to. Thus, he appears to have the ability to both understand and assist his counsel to the degree required for competency to stand trial.

IV. CONCLUSION

For the foregoing reasons, the court denies John Anthony Ayon's motion to be declared incompetent to stand trial.

IT IS SO ORDERED

DATED: December 18, 2019.

_____
UNITED STATES DISTRICT JUDGE